THE CHURCH OF ST. MONICA, Respondent, *v.* THE MAYOR,. ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK *et al.,* Appellants.

In an action to have certain taxes imposed upon real estate in the city of New York in and for the year 1882, adjudged void and cancelled, and to restrain their collection, the following facts appeared: The premises were purchased by one D., and were conveyed to him individually prior to the assessment and imposition of the tax; he purchased, however, for and with the moneys of plaintiff, a Roman Catholic church, of which he was pastor. It was common for priests of the church to have church property conveyed to them in this way. Prior to said conveyance, and ever since, said premises were and have been used exclusively for school purposes, under the management of D., as pastor — all branches of common ·school education being taught. Plaintiff was not incorporated as a religious body until in 1885, when D. conveyed the premises to it. The school has never been incorporated. A judgment was rendered in favor of plaintiff. *Held,* error; that said premises were not "a school-house" within the meaning, and were not exempt under the provisions, of the Revised Statutes (1 R. S., 388, § 4); that plaintiff being, when the tax was imposed, unincorporated, was not a "religious society" within the meaning of the acts (chap. 282, Laws of 1852, and § 827, chap. 410, Laws of 1882) with reference to exemptions from taxations in the city of New York, which declare that the exemption of a school-house or other seminary of learning shall not apply unless the building is "exclusively the property of a religious society;" that the words refer to a society that has been incorporated.

(Argued December 16, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York entered upon an order made February 7, 1889, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought for the purpose of having certain taxes which were imposed upon real estate in the city of New York in and for the year 1882, adjudged void and cancelled and to restrain the collection thereof.

The case was tried at a Special Term of the New York Superior Court, and the trial justice found the following

facts : That on or about December 22, 1881, James S. Dough-
erty entered into a written contract with the New York
Life Insurance Company for the purchase of premises known
as No. 304 East Seventy-Eighth street, New York city,
upon which was a four story building, with basement;
that on or about January 17, 1882, for a valuable consider-
ation, the insurance company, by deed, conveyed the prem-
ses to Dougherty, who took the property in his own name
individually, but purchased the same on behalf and with
moneys belonging to tne church of St. Monica, a religious
society of the Roman Catholic Church, of which he then was
pastor ; that it is a common custom for priests of the Roman
Catholic Church to take deeds of property in their own names,
and this custom was known to the archbishop at the time of
the purchase, and the purchase was made with the archbishop's
knowledge and authority ; that prior to January, 1882, and
ever since the building was and has been used exclusively for
school purposes under the management of Dougherty as
pastor of the church of St. Monica ; that the school was pre-
sided over by the Sisters of Charity ; that all female children
of St. Monica's parish, between the ages of five and sixteen
years, were admitted to the school, which was known as St.
Monica's Female Parochial School, and that all branches of
common school education were taught there ; that the base-
ment and several floors of the building during the period
aforesaid were used as follows : The basement was the class-
room for primary children ; the first floor, the class-room for
large children ; the second floor was used for the chapel ; the
third floor for a lecture room, and the fourth floor for the resi-
dences of the Sisters of Charity (with the exception of three
rooms used for storage) ; that the city of New York, through
its proper officers, assessed the premises for taxation in and for
the year 1882 in the sum of $7,000, and thereafter imposed a tax
upon the premises for that year, based upon the assessed valu-
ation, amounting to $157.50 ; that in the year 1885 the church
of St. Monica was incorporated as a religious body under the
provisions of chapter 45, Laws of 1863, and amendments ;

that on or about May 28, 1885, Dougherty conveyed the premises to the plaintiff, the incorporated church of St. Monica ; that the parochial school is not incorporated, but belongs to the plaintiff, and he found as conclusions of law that the tax of $157.50 imposed upon the property for 1882 was void, because at the time of the imposition thereof the property was exempt from taxation for the reason that the building was a "school-house," within the meaning of the statute exempting school-houses from taxation, and was exclusively used for the purposes of a school, and was exclusively the property of a religious society; and he gave judgment for the plaintiff as prayed for.

*D. J. Dean* for appellant. The building in suit was not a "school-house" within the meaning of the statute. (R. S. chap. 13, tit. 1, § 4; Laws of 1852, chap. 282; Laws of 1882, chap. 410, § 827; *Chegaray* v. *Mayor, etc.*, 13 N. Y. 220, 229; *Ass'n.* v. *Mayor, etc.*, 104 id. 581, 584; *People ex rel. Bd. of Assess.*, 32 Hun, 457; 97 N. Y. 648; *People* v. *Bd. of Education*, 13 Barb. 410, 411; 38 Hun, 595–596.) At the time of assessment for taxation in 1882, the building was not exclusively the property of a religious society. (*St. Francis* v. *Mayor, etc.*, 51 Hun, 355; 112 N. Y. 677; *Tracy* v. *Reed*, 38 Fed. Rep. 69; R. S. [7th ed.], 2181, §§ 51, 52, 53; 98 N. Y. 488; Laws of 1882, chap. 410, § 818; Laws of 1867, chap. 410, § 5.) The building and premises were not used exclusively for the purpose of a school-house. (*Reed* v. *Johnson*, 53 Tex. 284.)

*Alexander B. Johnson* for respondent. The building known as St. Monica's Female Parochial School was a "school-house" within the meaning of the statutes. (R. S. chap. 13, § 4; Laws of 1823, chap. 262, § 3; Laws of 1825, chap. 83, § 3; *Chegaray* v. *Mayor, etc.*, 13 N. Y. 220; Laws of 1852, chap. 282; Laws of 1882, chap. 410, §§ 824, 827, 1029; *Orphans* v. *Mayor, etc.*, 38 Hun, 593; Laws of 1853, chap. 301; Dillon on Mun. Corp. [3d ed.] § 773;

Cooley on Tax. 173, 174; *People ex rel.* v. *Board of Supervisors*, 47 Hun, 383.) The premises were owned exclusively by a religious society. ( *W. H. M. E. Church* v. *Mayor, etc.*, 20 Hun, 297; *Schultz* v. *Mayor, etc.*, 103 N. Y. 307.) When exemption is sought by an institution conducted for private gain, construction is strict, but when gratuitious, liberal. (*People ex rel.* v. *Comrs.*, 11 Hun, 505.)

EARL, J. Among the property exempted from taxation in the Revised Statues is the following : " Every building erected for the use of a college, incorporated academy or other seminary of learning ; every building for public worship, every school-house, court-house and jail, and the several lots whereon such buildings are situated, and the furniture belonging to each of them." (R. S. part 1, ch. 13 tit., 1 § 4. sub. 3.) Under this provision it has been held that no " seminary of learning " is exempt from taxation unless it is incorporated and that no " school-house " is exempt unless it belongs to the public common school system of the state. (*Chegaray* v. *Mayor, etc.*, 13 N .Y. 220 ; *People ex rel.* v. *Board of Assessors*, 32 Hun, 457, affirmed in this court 97 N. Y. 648 ; *Association for Colored Orphans* v. *Mayor, etc.*, 104 N. Y. 581). If, therefore, the exemption here claimed depended upon the Revised Statutes it is clear that it would have to be denied. There has been, however, further legislation. In 1852 (chap. 282), the act "defining the exemptions from taxation on public buildings in the city of New York " was passed, the first section of which is as follows

" The exemption from taxation of every building for public worship and every school-house or other seminary of learning, under the provisions of subdivision three of section four, title one, chapter thirteen of part first of the Revised Statutes, or amendments thereof, shall not apply to any such building or premises in the city of New York, unless the same shall be exclusively used for such purposes, exclusively the property of a religious society, *or of the New York Public School Society.*" And this provision was subsequently embodied in the consolidation act relating to the city of New York, except

the last phrase above italicized. (Laws of 1882, chap. 410, § 827). There is some dispute whether at the time this assessment was imposed the act of 1852 or the provision in the act of 1882 was in force, and it is now immaterial to determine the matter.

The provision above quoted is not happily worded, and its precise scope and meaning are not entirely clear, and the language has given some trouble to those who have had to deal with it. (*Association for Colored Orphans* v. *Mayor, etc.,* 38 Hun, 593). It was apparently the purpose of the act of 1852 to limit and confine in the city of New York the exemptions contained in the Revised Statutes, and not to extend them, and hence the qualifying words "exclusively used for such purposes and exclusively the property of a religious society," were added. But without undertaking to give a precise construction to these qualifying words, we think this at least is clear, that before a school-house can be exempted it must belong to the public school system of the city or be "exclusively the property of a religious society." We have, therefore, only to determine whether this school-house belonged to a religious society. We will assume that it belonged to the society at the time called the Church of St. Monica, although the legal title was held either by the insurance company or Father Dougherty. But that was an unincorporated society, and not, we think, such a society as the law-makers meant to include in the words "religious society," used in the act of 1852. They evidently had in mind religious societies incorporated under the act of 1813 entitled an act "to provide for the incorporation of religious societies," or under some one of the other numerous acts for the same purpose. The words "religious society" when used in the laws of this state, as they frequently are, generally have reference to an incorporated religious society. It cannot be supposed that it was the legislative intention that any number of persons could come together for some religious purpose and set up a school and then claim the exemption. In using the words "religious society" it is most probable that the law-makers had in mind

some legal entity capable as such of taking and holding property, and popularly known as a religious society.

We are, therefore, of opinion that upon the facts found, the plaintiff was not entitled to the relief claimed, and that the judgment should be reversed, and as there is no probability that the facts can be changed, the complaint should be dismissed with costs.

All concur.

Judgment accordingly.