(32 App. Div. 197.)

PEOPLE ex rel. YOUNG MEN'S ASSOCIATION FOR MUTUAL IMPROVEMENT IN CITY OF ALBANY v. SAYLES et al.

(Supreme Court, Appellate Division, Third Department. July 6, 1898.)

1. TAXATION—EXEMPTIONS—PROPERTY USED FOR CHARITABLE PURPOSES.
Where an eleemosynary corporation, not a hospital corporation, devoted a portion of its building to its corporate purposes, and sublet the remainder, using the net income for the same purpose, the portion of the building from which the income was derived was not exempt from taxation, under Laws 1896, c. 908, § 4, subd. 7, as amended by Laws 1897, c. 371, exempting property of such corporations, used exclusively for carrying out thereon their corporate purposes, and providing that property only partially so used shall be exempt only to the extent of such user, but that property of hospital corporations shall be entirely exempt, even when a portion is used for other purposes, where it is so used to produce an income to be applied to corporate purposes.

2. SAME—WAIVER OF EXEMPTIONS.
Where property was only partially exempt from taxation, and no exemption was asked, the whole of it might be taxed.

Appeal from special term, Albany county.

Certiorari on the relation of the Young Men's Association for Mutual Improvement in the city of Albany to William Sayles and others, assessors of Albany, to review an assessment. From an order reducing the assessment, defendants appeal. Reversed.

The order appealed from was based upon the ground that the relator is a corporation organized exclusively for the mental and moral improvement of men and women, and for benevolent purposes, and that its said real property is used exclusively for carrying out thereupon such purposes, and therefore is exempt from taxation, under chapter 371, Laws 1897.

Argued before PARKER, P. J., and LANDON, PUTNAM, and MERWIN, JJ.

John A. Delehanty, for appellants.
Harris & Rudd, for respondents.

LANDON, J. The relator is a corporation organized under the laws of the state exclusively for promoting and carrying out some

of the benevolent and charitable purposes specified in chapter 371 of the Laws of 1897. It lawfully acquired the real estate in question by means of the contributions of the benevolent. It consists of a valuable lot fronting upon Washington avenue, in the city of Albany, 120 feet in width. 310 feet in depth, upon which it erected, at a cost of about $160,000, furnished by such contributions, a large building, named "Harmanus Bleecker Hall," in honor of the liberal citizen who founded a fund from which a large portion of the cost was duly derived. This building is 94 feet in width in front, 112 feet in the rear, and 210 feet in depth. It is a spacious and elaborately constructed theater or hall, suitable for public meetings, exhibitions, and entertainments. Upon its second floor, in its front part, over the vestibule and box office of the theater, are three adjoining rooms, next to the gallery of the theater. These three rooms are used by the relator for its public library, and the other purposes of its organization. The relator leases, at fixed rates of rental, the public hall or theater to others for theatrical performances, public entertainments, and meetings of various kinds; and it is practically thus, and not otherwise, used. The income thus derived from such rentals is exclusively devoted to the benevolent purposes of the relator. Practically, however, the cost of care-taking, maintenance of the building, and incidental expenses, has nearly been equal to the so-called net revenue thus derived. The building is gratifying to civic pride, but the property has not proved to be a remunerative investment, and the evidence affords no clear assurance that it will not prove a hindrance to the accomplishment of the benign purposes for which the relator was organized. The building stands 100 feet back from the front of the lot,—this space being reserved in the hope of erecting thereon a separate building for the relator's library. The assessors first placed the assessment for 1897 at $150,000, but, as the result of the hearing upon the alleged grievance of the relator, they reduced it to $50,000.

Under the Revised Statutes, "the real and personal property of every public library" was exempt from taxation. 2 Rev. St. (8th Ed.) marg. p. 388, § 4, subd. 5. The assessors allowed the relator this exemption until 1897. Chapter 908 of the Laws of 1896, of which chapter 371, Laws 1897, is an amendment of subdivision 7 of section 4 thereof, repealed section 4 of the Revised Statutes, above referred to. As "all real property within this state, and all personal property situated or owned within this state, is taxable, unless exempt from taxation by law" (Laws 1896, c. 908, § 3), the real estate of the relator is now taxable, unless exempt under subdivision 7 of section 4 of the act last cited, as amended in 1897. Such subdivision provides that:

"The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, scientific, literary, library, patriotic, historical or cemetery purposes, or for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes, and the personal property of any such corporation, shall be exempt from taxation. * * * The real property of any such corporation

not so used exclusively for carrying out thereupon one or more of such purposes, but leased or otherwise used for other purposes, shall not be exempt, but if a portion only of any lot or building of any such corporation or association is used exclusively for carrying out thereupon one or more such purposes of any such corporation or association, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion to the extent of the value of such remaining or other portion shall be subject to taxation."

To be exempt, the corporation must be organized exclusively for some of the purposes mentioned in the section. We assume, without discussion, that the relator satisfies that requirement. The next requirement is that such real estate must be "used exclusively for carrying out thereupon one or more of such purposes." If it is "not so used exclusively for carrying out thereupon one or more of such purposes, but leased or otherwise used for other purposes, [it] shall not be exempt." The fact seems to be that the three rooms of this building devoted to the relator's library are used exclusively for carrying out therein—that is, "thereupon," in the sense of the provision—one or more of the benevolent purposes of the organization, but that the larger portion thereof, consisting of the theater or public hall, is not so used, but is devoted to carrying out therein or "thereupon" the "other purposes" which the business of theatrical performances and the other public meetings, exhibitions, and entertainments involve and require. In other words, a small part of this building is exclusively used for carrying out thereupon the benevolent purposes within the exemption, and the greater part for carrying out thereupon other purposes not within the exemption; but the net gains of the nonexempt enterprise are, so far as they are realized, applied to the maintenance and support of the benevolent enterprise. We are asked to give a liberal construction to the exemption provision of the statute, upon the ground that a wise public policy should foster such worthy institutions as the relator, and because, also, the legislative purpose was liberal, and should be generously aided; and to this end we are asked to hold that, because the rentals of the commercial portions of this building are applied to the expenses of the benevolent objects promoted in the other portion, therefore, in effect, the whole building is exclusively used for benevolent purposes, and for none other. In our view, the statute does not permit us this pleasure. The addition made to subdivision 7 of section 4 in 1897 seems to indicate clearly that the legislative intention was not so liberal as the relator contends. The addition is as follows:

"Provided, however, that a lot or building owned, and actually used for hospital purposes, by a free public hospital, depending for maintenance and support upon voluntary charity, shall not be taxed as to a portion thereof leased or otherwise used for the purposes of income, when such income is necessary for, and is actually applied to, the maintenance and support of such hospital."

This amendment clearly implies that the real estate of charitable corporations, other than for hospital purposes, leased or used for income, is not entitled to the exemption thereby granted to hospital corporations upon their real estate leased or used for income. People v. Wemple, 129 N. Y. 543, 551, 29 N. E. 808. There are two kinds of

taxation,—one general, upon all property not specially exempted, and the other upon certain classes of property, such as corporate franchises, property passing by collateral inheritance, and some others. It is well settled that statutes exempting property from general taxation must be strictly construed against the property holder, and, if the exemption is not plainly expressed, may not be presumed. People v. Commissioner of Taxes, 95 N. Y. 554; People v. Davenport, 91 N. Y. 574; People v. Cook, 148 U. S. 397, 13 Sup. Ct. 645; New Orleans City & L. Co. v. City of New Orleans, 143 U. S. 192, 12 Sup. Ct. 406; Winona & St. P. Land Co. v. Minnesota, 159 U. S. 526, 16 Sup. Ct. 83. Our courts apply the same strict rule to religious and charitable corporations. Church of St. Monica v. Mayor, etc., of New York, 119 N. Y. 91, 23 N. E. 294; Catlin v. Trustees, 113 N. Y. 141, 20 N. E. 864; Roosevelt Hospital v. Mayor, etc., of New York, 84 N. Y. 114; Buffalo City Cemetery v. City of Buffalo, 46 N. Y. 506. But statutes imposing special taxation, and thus special burdens upon its owners, somewhat in the nature of an unusual exaction, are to be construed strictly against the government and in favor of the owner. In re Vassar, 127 N. Y. 1–15, 27 N. E. 394; In re Enston, 113 N. Y. 174, 21 N. E. 87. The distinction should be observed in consulting the cases. The relator cites cases, arising under the Revised Statutes and special statutes, in which the courts have considered with some liberality the temporary use of the real estate of charitable corporations for other purposes than those of their organization, or the use of some portions of it for incidental purposes which produced income, or saved expense, or afforded pleasure or means of recreation. Seminary v. Cramer, 98 N. Y. 121; People v. Commissioners of Taxes, etc., 6 Hun, 109; People v. Barber, 42 Hun, 27. It may be observed with respect to these cases that the statute we are now considering prescribes exclusive use as the main test of exemption, and then guards by further provisions against the relaxation of that test. Thus, "The real and personal property of every public library" was the provision under which the relator's real estate was formerly exempted, but the exemption is now limited, as to real estate, to such as is by the relator "used exclusively for carrying out thereupon one or more" of its corporate purposes; and, lest this should be evaded, the exemption is expressly denied to such of its real estate as is "not so used exclusively for carrying out thereupon one or more of such purposes, but leased or otherwise used for other purposes," and then by the amendment of 1897 the real estate of corporations for hospital purposes leased for income for the hospital expenses is alone exempted from the rigorous test. Undoubtedly the legislature, not lacking generous sympathy with the charitable institutions of the state, felt that it was necessary to guard against abuses, and that charity itself would be better fostered if it were not tempted to undertake other enterprises in the hope, often delusive, of expanding the charity. See People v. Sayles (herewith decided), 53 N. Y. Supp. 65. The words "exclusively used" were considered in Young Men's Christian Ass'n v. Mayor, etc., of New York, 113 N. Y. 187, 21 N. E. 86; and the court did not strip them of any part of their full signification. It is the exclusive use of the real estate for carrying out thereupon one or more

of the purposes of the incorporation of the relator which confers the right of exemption, and not the benefits accruing to it and its useful work from the income derived from others in consideration of their use of the real estate for their purposes. In the case of Society v. Kelly (Or.) 42 Pac. 3, the right to exemption under a statute similar to the one before us was considered. We refer to it, not only in support of our conclusion, but also as containing a full and able discussion of the subject, fortified by citations from the courts of other states too numerous for insertion here. Under the statute the assessors might have exempted a portion of the property from taxation. This they did not do in form, but we assume did so in effect, when they reduced the assessment from $150,000 to $50,000. But the relator asked no such partial exemption, and therefore has no grievance upon that account.

The order should be reversed, with costs. All concur.