PEOPLE ex rel. ROOSEVELT HOSPITAL v. RAYMOND et al.

(Supreme Court, Appellate Division, First Department. June 5, 1908.)

1. TAXATION—EXEMPTIONS—STATUTES.

General Tax Law, Laws 1896. p. 797, c. 908, § 4, providing what property shall be exempt from taxation, among which is the property of a corporation or association organized exclusively for hospital purposes, and used exclusively as such, and that the real property not so exclusively used, but leased or used for any other purpose, shall not be so exempt, is a comprehensive enactment governing the whole subject of exemptions, and by it all prior acts, general or special, making provisions for exemptions, were repealed, whether enumerated in the repealing clause or not.

2. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—SPECIAL CHARTERS—EXEMPTION FROM TAXATION.

General Tax Law, Laws 1896. p. 797, c. 908, § 4, providing what property shall be exempt from taxation, and repealing grants of exemptions by a special charter granted in 1864, is not in violation of the federal Constitution as impairing the obligation of contracts, since under the express provisions of the state Constitution of 1846, continued in subsequent Constitutions, the right was expressly reserved to alter or repeal all general laws and special acts authorizing the formation of corporations.

3. TAXATION—EXEMPTION—HOSPITALS—USE FOR OTHER PURPOSES.

Under General Tax Law, Laws 1896, p. 797, c. 908, § 4, providing for the exemption of real property used for hospital purposes, and that the property of any such corporation not so exclusively used for carrying out thereupon one or more of such purposes, but leased or used for other purposes. shall not be exempt, real estate owned by a hospital and leased to tenants is not exempt, though the rents are devoted to hospital purposes.

4. SAME—STATUTORY PROVISIONS.

Laws 1905, p. 883, c. 375, entitled "An act to amend chapter 4 [page 3] of the Laws of 1864, entitled 'An act to incorporate the Roosevelt Hospital in the city of New York,' in relation to the election of additional trustees and the filling of vacancies," did not re-enact the provisions of such law relating to exemption from taxation.

5. STATUTES—PRIVATE OR LOCAL LAWS—EXEMPTIONS FROM TAXATION.

Under Const. art. 3, § 18, providing that the Legislature shall not pass a private or local bill granting an exemption from taxation on real or personal property, a law intended to re-enact a provision of a special charter granting a hospital exemption from taxation would be unconstitutional.

Houghton, J., dissenting.

Appeal from Special Term.

Certiorari by the people of the state of New York, on the relation of the Roosevelt Hospital, against Frank Raymond and others, as commissioners of taxes and assessments of the city of New York. From an order vacating an assessment, defendants appeal. Reversed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

David Rumney (Curtis A. Peters, on the brief, and Francis K. Pendleton, Corp. Counsel), for appellants.

John Mason Knox (H. B. Closson, of counsel), for respondent.

CLARKE, J. This is an appeal by the commissioners of taxes and assessments from an order of the Special Term in certiorari proceed-

ings vacating an assessment of certain real estate of the relator for taxation, upon the ground that the said real estate is exempt from assessment and taxation. The property in question is No. 325 East Houston street, in the city of New York. For the year 1906, it was assessed for purposes of taxation at the sum of $22,000, upon which the tax amounted to $325.35.

The petition upon which the writ of certiorari was issued alleged: That relator is a corporation incorporated by a special act of the Legislature, namely, chapter 4 of the Laws of 1864. That James H. Roosevelt died in November, 1863, seised of certain premises, among which were No. 325 East Houston street in the city of New York. That he left a last will and testament, duly admitted to probate on December 16, 1863, by which he gave and bequeathed all the residue of his personal estate, then amounting to over $674,000, to trustees therein designated in trust for the establishment in the city of New York of a hospital for the reception and relief of sick persons and for its permanent endowment. That he further devised all of his real estate in the city of New York, subject only to the payment of an annuity, long since expired, to his executors in trust, to receive the rents and profits thereof and to apply the same to the use of a nephew, for his life, and upon his death, without issue him surviving, to sell the same and pay the proceeds thereof to the said trustees, in trust toward the hospital endowment above referred to. He further directed the said trustees promptly to apply to the Legislature of the state of New York for proper acts to incorporate, secure, and perpetuate the said hospital, and in the contingency that said Legislature should, within two years after his death, and during two lives therein designated, refuse or neglect to grant a liberal charter for the safe organization, conduct, and perpetuity of such hospital establishment in accordance with the provisions of said will, in that event directed the said trustees, instead, to pay over the entire trust fund to the government of the United States of America. The said nephew departed this life without issue him surviving on the 18th of January, 1864. Thereafter the trustees applied to the Legislature, who passed the act hereinbefore alluded to on February 2, 1864. Said act referred to the will of said James H. Roosevelt, provided that the trustees named in the will, naming them, and their successors "are hereby incorporated and declared to be a body politic and corporate by the name of 'The Roosevelt Hospital'"; that the object of the corporation should be the establishment of a hospital and its permanent endowment, pursuant to the directions of the last will and testament of its founder, as aforesaid. Said act further provided that the property, real and personal, of such corporation should be exempt from taxation, and entitled to the benefit of the provisions of law relative to charitable institutions; that the said corporation was thereby empowered to demand and receive from the executrix and the residuary legatees named in said will all personal property and real estate, and the proceeds of all personal property and real estate in any manner devised or bequeathed by the said will for the establishment of a hospital, and was further empowered, upon the sale of said real estate of said Roosevelt, deceased, as provided in his said will, to purchase and

hold the whole or any part thereof as the corporation might determine. Upon the passage of the said act, the trustees designated in the will of said Roosevelt accepted the same as the liberal charter for the safe organization, conduct, and perpetuity of such hospital establishment for which the testator had stipulated in his will, and upon the faith of the said act and of the promises thereby made as to the powers and privileges of the said corporation, and in particular upon the faith of the promise that its real estate, as well as its personal property, should be exempt from taxation, on or about the 7th day of March, 1866, there was conveyed to the said Roosevelt Hospital, by the deed of the sole executrix of the will, all of the real estate of which the said Roosevelt died seised, including the particular parcel hereinbefore described, and the said executrix turned over all of such real estate, and the said trustees turned over all of the residue of the testator's personal estate to the said corporation, instead of to the government of the United States, as directed by the said will in the event of the refusal by the Legislature of such liberal charter. That the corporation purchased the block of land between Fifty-Eighth and Fifty-Ninth streets, and Ninth and Tenth avenues, in the city of New York, and erected suitable buildings for the use of such hospital, which has ever since been maintained. That at the close of the year 1905 said corporation had received and treated there, in all, more than 80,000 persons, of whom more than 67,000 were cared for by it gratuitously. That during the whole of said period, until after the passage by the Legislature of the state of New York of chapter 908 of the Laws of 1896 (page 795) known as the "Tax Law," the city of New York upon its part respected the exemption from taxation of the real property of said corporation promised by its said charter as aforesaid; but that thereafter the tax commissioners, upon the plea that by the enactment of the tax law the Legislature had intended to repeal the exemption, made an assessment against 325 East Houston street of $22,000; the tax thereon amounting to $325.35.

The petition further alleges: That the Legislature never intended to repeal the exemption from taxation of its real estate conferred by its charter. That, if such were the intention of the Legislature in passing the said act of 1896, and such be the true construction thereof, then, so far as the said tax law attempts to repeal or impair said exemption, it is in violation of the provisions of section 10 of article 1 of the Constitution of the United States, which provides that no state shall pass any law impairing the obligation of contracts, inasmuch as the offer by the Legislature to the trustees under the said will, and to said corporation of the said charter, with its promise of exemption from taxation of the real estate to be thereafter vested in it pursuant to the terms of said will, and the acceptance of the charter by said trustees and the corporation and the transfer of said real and personal property to said corporation, instead of to the government of the United States upon the faith of such charter, constituted a contract between the Legislature of the state and the said trustees and the said corporation, within the meaning of said constitutional provision.

It was stipulated on the record that the property in question, No. 325 East Houston street, is, and at all times has been, occupied by ten-

ants of the relator and is used for the purposes of business and residence by such tenants, and that the revenues derived from it have been appropriated to the corporate purposes of the hospital.

General Tax Law, Laws 1896, p. 797, c. 908, provides:

"Sec. 4. Exemption from taxation. The following property shall be exempt from taxation: * * * (7) The real property of a corporation or association organized exclusively for * * * hospital * * * purposes * * * and used exclusively for carrying out thereupon one or more of such purposes."

Under this provision of law, the hospital maintained by the relator is manifestly exempt from taxation. The property in question, however, is occupied by tenants of the relator and used by them for their purposes, not for carrying out thereupon hospital purposes. The section of the tax law cited supra further expressly provides that:

"The real property of any such corporation not so exclusively used for carrying out thereupon one or more of such purposes, but leased or used for other purposes, shall not be so exempt."

Concededly, this property is not exempt from taxation under the provisions of the general tax law. "It is the exclusive use of the real estate for carrying out thereupon one or more of the purposes of the incorporation of the relator which confers the right of exemption, and not the benefits accruing to it and its useful work from the income derived from others in consideration of their use of the real estate for other purposes." People ex rel. Young Men's Association v. Sayles, 32 App. Div. 197, 53 N. Y. Supp. 67, affirmed on opinion below 157 N. Y. 677, 51 N. E. 1093.

In Matter of Huntington's Estate, 168 N. Y. 399, 61 N. E. 643, the question was whether a legacy given by will to the Roosevelt Hospital, the relator at bar, was subject to the transfer tax. The court said:

"In our opinion the Legislature intended by the Tax Law of 1896 to provide, pursuant to the Constitution, for this particular class of immunities from taxation, and to cover, as the act constituting the commissioners of statutory revision required, the whole field of 'the collection and assessment of taxes and exemption of property from taxation throughout the state,' so far, at least, as their view of the subject extended. * * * The general rule of the liability to taxation of all property within the state was preserved, and the exemptions classified in such comprehensive phrase as to make all prior private and special exemptions unnecessary so far as the general act conferred the same exemptions as the special and private acts, and repugnant and inconsistent so far as the special and private acts conferred greater immunities and exemptions than the general act. If these views are correct, it was not necessary to search out the many private statutes conferring exemptions and to enumerate them in the schedule of the repealed statutes. In the construction of a statute of so much moment, enacted as the result of long experience, much discussion, and great consideration, the rule that effect must be given to the intent of the Legislature, if the language of the enactment will permit, is of commanding force. * * * It follows that the property of none of these societies is exempt from taxation, except under subdivision 7, §.4, of the tax law, and, as the exemptions therein enumerated are not applicable to exemptions from taxable transfers, the legacy to each society is subject to the transfer tax."

Pratt Institute v. City of New York, 183 N. Y. 151, 75 N. E. 1119, involved a question of the taxation of certain property owned by the Pratt Institute, which was an educational institution organized by special act (chapter 398, p. 497, of the Laws of 1887), and located in the

city of Brooklyn.  It owned five lots of land in said city, each with a dwelling house thereon.  This property was not used for carrying out thereupon one or more of the objects of the corporation, but it was leased, and the net rents used exclusively in its educational work.  The said property was assessed for taxation.  The Court of Appeals said:

"The Pratt Institute is a noble charity, carrying on a work of great usefulness, strictly within the lines of its charter and in accordance with the beneficent purpose of its founder.  To the average mind such a charity appeals strongly for relief from the usual burdens resting upon property, because, as it may well be claimed, it discharges its duty to the public by devoting all that it has to the public welfare."

After reviewing the Legislature in regard to taxation and quoting the provisions of the general tax law hereinbefore cited, the court proceeded:

"Thus the Legislature made all property taxable, except such as is exempt, and in declaring what is exempt it covered the case of educational institutions, such as the plaintiff, exempting all their personal property absolutely, and so much of their real estate as is used exclusively for carrying out thereon one or more of the corporate purposes, but not exempting real estate held as an investment only, even if the income was used for a corporate purpose. * * * The new enactment is substituted in the place of all statutes previously existing and becomes the sole rule of action."

After quoting from Matter of Huntington's Estate, supra, and People ex rel. Ass'n v. Sayles, supra, the court said:

"Two decisions, each directly in point, made within the last 10 years, ought to settle the question; but the appellant claims that they have both been overruled by a later case decided without an opinion.  People ex rel. Cooper Union v. Wells, 180 N. Y. 537, 72 N.. E. 1147.  When a decision is made upon full consideration, and judgment is rendered upon well-defined grounds, it cannot be regarded as overruled by a subsequent case in which no opinion was written and no ground of action stated.  We do not overrule important authorities sub silentio, and it was not our intention to overrule either of the cases named. No such suggestion was made at our consultation table, and no such result follows from the Cooper Union Case, as it is clearly distinguishable."

The opinion further considers the constitutional argument presented in the case at bar that, if the tax law is so construed as to impliedly repeal the exemption clause in the plaintiff's charter, it violates the federal Constitution by impairing the obligation of a contract, and, after pointing out that this argument was answered by that clause of the Constitution of 1846 and continued in our present Constitution, which provides that all general laws and special acts passed for the creation of corporations may be altered from time to time or repealed (Const. 1848, art. 8, § 1; Const. 1895, art. 8, § 1), proceeded:

"Thus, before the plaintiff received its charter from the Legislature, the right to alter or repeal it had been expressly reserved by that body and irrevocably reserved by the Constitution.  The reservation became a part of the charter of every corporation subsequently organized, whether under a general act or by special statute"—and cites in direct support of that proposition Citizens' Savings Bank v. Owensboro, 173 U. S. 636, 644, 19 Sup. Ct. 530, 43 L. Ed. 840.

The cases heretofore considered, it seems to me, furnish conclusive authority for the following propositions:  First, that the general tax law is a comprehensive enactment governing the whole subject of

taxation and exemption therefrom; second, that by it all prior acts, general or special, making provision for exemptions, were repealed, whether enumerated in the repealing clause or not; third, that the repeal of such exemptions granted by special charters was not a violation of the provisions of the United States Constitution as an impairment of a contract, because by the state Constitution the right was expressly reserved to alter, from time to time, or repeal, all general laws and special acts authorizing the formation of corporations; and, fourth, that the exemptions provided by the general tax law in regard to real property owned by a hospital is confined to the real estate exclusively used for carrying out thereupon the purposes of the corporation, and does not extend to real estate owned by a hospital and leased to tenants for their purposes, although the rents and incomes therefrom are devoted exclusively to the general purposes of the hospital.

The respondent urges that it was not the intention of the Legislature by the general tax law to repeal a special exemption from taxation which was promised in the charter of a benevolent corporation as an inducement to procure, and which did procure, a transfer to it by specific individuals of specific property, which, but for the promise, might otherwise have been disposed of. A case not distinguishable, as I read it, from that at bar, was presented to this court in People ex rel. Cooper Union v. Gass, 119 App. Div. 280, 104 N. Y. Supp. 643. In that case the relator was incorporated by chapter 279, p. 630, of the Laws of 1859. This act authorized Peter Cooper to convey to a body thereinafter created a block of land in the city of New York to be devoted to the improvement and instruction of the inhabitants of the United States in practical sciences and art. The deed by which the property was to be conveyed was set out in full. The act provided that the premises and property mentioned in said deed and which should at any time belong to or be held in trust by the corporation or the trustees, including all endowments made to it, should not, nor should any part of it, be subject to taxation while the same should be appropriated to the use, intents, and purposes of the corporation in said deed provided for. This corporation, being thus incorporated, and having received from Peter Cooper the conveyance described as set forth in the act, and also other endowments, invested a certain portion of its property in a bond secured by a mortgage upon certain real estate in the county of New York, and, having presented that mortgage for record, the register refused to record the same unless the relator paid the tax required by chapter 729, p. 2059, of the Laws of 1905, as amended by chapter 532, p. 1447, of the Laws of 1906. The relator thereupon, claiming that the property was, under the act of incorporation, exempt from taxation for all time, applied for a writ of mandamus to compel the register to record the mortgage without the payment of the tax demanded. This court held that the relator was clearly liable for the tax, unless the exemption provided for by chapter 279, p. 630, of the Laws of 1859, incorporating it, was not subject to amendment or repeal by the Legislature; but held that:

"There was a third party who became, as it were, a party to the incorporation of the relator. That was Mr. Peter Cooper. The substantial situation was that he offered to convey a valuable estate to be applied to certain chari-

table uses for the benefit of the people of the state, upon certain conditions. The Legislature, in effect, accepted that deed by incorporating the relator and authorizing the corporation to accept the conveyance of that property from Mr. Cooper. * * * As a part of the provision to insure the application of this entire property to the uses to which it was to be applied, the state agreed that the property should be applied to such uses, and the property should not be subject to taxation. * * * This is more than a mere act incorporating the corporation. It is also a stipulation or agreement by the state that the property conveyed to the corporation should be exclusively applied to the purposes for which the corporation was incorporated, and the reservation of a right in the Constitution and general laws of the state to repeal or alter the charter would not extend to a clause, based upon an adequate consideration, under which valuable property has been devoted to public use, to change the terms under which the conveyance for the benefit of the property was made."

The Court of Appeals, however, reversed this decision in 190 N. Y. 323, 83 N. E. 64. The one question considered in the Court of Appeals is that now argued before us. Mr. Cooper in his lifetime founded the noble benefaction which bears his name. The deed in which he conveyed the real estate to the corporation created by the act was recited in the act itself. In the case at bar, the will under which the property was to pass to the corporation to be formed was recited in the act itself. In each case the state, by the act of its Legislature, authorized the formation of the corporation and empowered it to accept the property for the purposes and under the terms prescribed by the donor, and the donor in each case transferred the property, it may be presumed, relying upon the provisions of the act obtained from the Legislature for the purposes of carrying out his wishes, and yet the Court of Appeals said:

"It seems to me that it is a mistaken view of the facts, as they existed at the time when the law constituting the charter of the Cooper Union was enacted, to assume that one of the considerations moving to Peter Cooper for the conveyance of the land which he gave to the corporation was an irrevocable agreement on the part of the state that neither that land nor any other property of the corporation should be subjected to taxation. It may very well be that he was influenced to some extent by the present assurance then given by the Legislature that it should not be taxed, but this was accompanied by the knowledge on his part that the Legislature possessed the constitutional power to revoke the exemption, and might at any time exercise it. He must be deemed to have acted in the light of what the law presumes him to have known in this respect. * * * I am clear that from any point of view the repeal of the exemption conferred by the charter of the relator was within the power of the Legislature. * * * I think the Legislature, under the Constitution, did not and could not abdicate its power to repeal the exemption as to any or all of the property of the relator, and that it was free to exercise that power whenever it deemed that sufficient reason existed to do so. With the wisdom of its exercise the courts have nothing to do."

The policy of the state therefore now seems to be fixed that only that real estate of that class of charitable institutions of which the relator is one, whereupon the purposes of its incorporation are carried out, shall be exempt from taxation, and that no bargain made by a donor for exemption and incorporated in an act passed prior to the passage of the general tax law survives that enactment.

Finally, the respondent urges that the Legislature, since the passage of the general tax law, has re-enacted the provisions exempting its real estate from taxation. In 1905 there was passed chapter 375 of

the laws of that year (Laws 1905, p. 883, c. 375), entitled "An act to amend chapter 4 [page 3] of the Laws of 1864, entitled 'An act to incorporate the Roosevelt Hospital in the city of New York,' in relation to the election of additional trustees and the filling of vacancies." By the first section of the original act, nine trustees were created, five of whom were presidents of certain enumerated institutions who were created trustees by virtue of their offices in said institutions, and succession in the office of trustee was conferred upon their successors in office as presidents, respectively, of such institutions, and, in addition, there were four trustees named. Acts 1905, p. 883, c. 375, adds a new section (section 1a) to the original act, providing for the election of two male native born citizens residing in the city of New York as trustees in addition to those named in the act. Section 3, which is the section containing the exemption of taxation, is amended by the substitution, before the phrase "individual trustees or their successors," of the word "six" for the word "four," as it was in the original act, and that is the only change.

This act is to be treated, except in so far as it provides for two additional trustees, as a mere continuation of the original act, and not as a new enactment intended to repeal for the benefit of this corporation, the provisions of the general tax law. Its object is clearly expressed in its title, "in relation to election of additional trustees and the filling of vacancies." If it had been intended, or if it were construed, to have the effect urged by the respondent, the act would be clearly unconstitutional, for by the provisions of section 18 of article 3 of the state Constitution, adopted in 1901, it is provided that:

"The Legislature shall not pass a private or local bill in any of the following cases: * * * Granting to any person, association, firm or corporation an exemption from taxation on real or personal property."

It is clear that this constitutional provision, passed after the adoption of the general tax law, is in harmony therewith and is the best evidence of the public policy of the state. When it passed the tax law, the Legislature repealed all special exemptions, and by adopting this amedment to the Constitution the people prohibited the passage in the future of any special exemptions from taxation.

It follows therefore that the action of the commissioners of taxes and assessments in assessing the tax under consideration was lawful, and the order of the Special Term vacating said assessment should be reversed, and the writ of certiorari dismissed, with costs and disbursements to the appellants in this court and in the court below.

INGRAHAM, McLAUGHLIN, and SCOTT, JJ., concur.

HOUGHTON, J. I dissent on the ground that the real property in question was a part of the property transferred to create the original fund on which the hospital was founded, and hence is not affected by subsequent statutes, like after-acquired property involved in the authorities cited.