PEOPLE ex rel. BUFFALO & L. E. TRACTION CO. v. STATE BOARD OF
TAX COM'RS OF STATE OF NEW YORK.

(Supreme Court, Appellate Division, Third Department.  May 16, 1911.)

TAXATION (§ 385*)—MORTGAGE TAX—REGISTRATION FEES—CORPORATION MORT-
GAGES—APPORTIONMENT—AUTHORITY OF COMMISSION.

Tax Law (Consol. Laws 1909, c. 60) § 259, provides that where a trust
mortgage is executed to secure bonds, and the total amount thereof has
not been advanced before the mortgage has been recorded, the recording
tax may be paid on the amount advanced and as advanced from time to
time.  Section 260 provides that, where real property covered by such
mortgage is located partly within and partly without the state, the com-
missioners shall determine what proportion shall be taxable under the
recording tax by determining the relative value of the mortgaged prop-
erty within the state as compared to the total value of the entire mort-
gaged property, and, if the mortgage shall be presented for record before
such termination, the mortgagor shall file a verified statement specifying
the relative value of the property within and without the state, and, on
receipt of such statement, the board on notice shall proceed to determine
what proportion of the principal indebtedness shall be used as the meas-
ure of taxation within the state.  *Held* that, where a trust deed securing
bonds of a corporation was filed for record before a large part of the
bonds were issued covering property within and without the state, the
board had jurisdiction to determine the proportionate amount of prop-
erty situated within the state covered by the mortgage at the time of the
first advancement or issuance of bonds under the mortgage, and also had
jurisdiction to make such determination concerning the subsequent ad-
vancement as made, each advancement being regarded in the light of the
new mortgage, and each determination of the tax payable on the partic-
ular advancement being final and not reviewable by the board until re-
versed or set aside for fraud, mistake, etc.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 385.*]

Betts, J., dissenting.

Certiorari by the People, on the relation of Buffalo & Lake Erie
Traction Company, against the State Board of Tax Commissioners,
requiring the board to certify and return to the office of the clerk of
Albany county all its proceedings had in determining the amount of
mortgage tax reapportioned by them on account of mortgaged prop-
erty held by relator, partly within and partly without the state, under
Tax Law (Consol. Laws 1909, c. 60) § 260.  Writ granted, determin-
ation annulled, and cause remitted.

Argued before SMITH, P. J., and KELLOGG, SEWELL,
HOUGHTON, and BETTS, JJ.

Daniel J. Kenefick, for relator.

Irving D. Vann, Deputy Atty. Gen., for respondent.

HOUGHTON, J.  The relator is an electric surface railroad and
operates and owns property in Erie and Chautauqua counties, in the
state of New York, and in the state of Pennsylvania.  On November
1, 1906, it executed a trust mortgage to secure an issue of bonds in
the amount of $12,000,000, covering the property situated in both
states, and such as might be acquired in the future.  At the time this
mortgage was recorded $4,500,000 had been advanced, and, there not

having been any determination of the State Board of Tax Commissioners as to the relative proportional value of the mortgaged property within the state and without, the relator filed a statement, as provided by section 260 of the tax law (Consol. Laws 1909, c. 60; Laws 1909, c. 62), setting forth that approximately one-third of the property of the relator covered by the mortgage was situated within the state of New York, and the mortgage tax on that portion of the money which had been advanced was paid. About one year later, the State Board of Tax Commissioners, after a hearing had been had, determined that only approximately one-fifth of the property covered by the mortgage was located within the state and fixed the recording tax at a less amount, and directed that the overpayment be returned to the relator. Thereafter, and during the years 1907, 1908, and 1909, various advancements under the mortgage were made aggregating $1,870,000, and, as these advancements were made and bonds issued, the relator paid the recording tax at the rate which had been fixed by the tax board. The original advancement and the subsequent ones were used by the relator in purchasing additional properties; the proportion of such purchase being greater in the state of New York than in the state of Pennsylvania. Thereupon the State Board of Tax Commissioners of its own motion, upon notice to the relator but against its protest, proceeded to redetermine the relative value of the property located within the state, and it decided that at the time of the last advancement on the 21st of April, 1909, the proportion within this state was slightly more than two-thirds of the total value of property in both states, and directed the relator to pay $16,765.76 as a recording tax in addition to what it had already paid. This conclusion was reached by ascertaining such proportional value at the time of the last advancement, ignoring the prior determination when the first advancement was made, and disregarding the proportional values at the time the intermediate advancements on the mortgage were made.

The relator sued out certiorari to review such determination, and insists that the State Board of Tax Commissioners had no power of its own motion to redetermine the proportion of property within the state or to readjust the tax, and that, if it did have such power, it had no right to set aside its former determination, which was binding as to all advancements prior thereto as well as to all advancements under the mortgage made subsequently, the recording tax upon which had been paid in reliance thereon and without objection; and, if this position is not wholly sound, that at least the first determination was binding as to all advancements on the mortgage made prior thereto. The respondent maintains that the first determination had no binding force because the mortgage must be considered as an entirety, and that the State Board of Tax Commissioners has the right to readjust and fix the recording tax from time to time as advancements are had, giving credit for such payments as have been made thereon. Section 259 of the tax law provides that where a trust mortgage is executed to secure the payment of bonds issued or to be thereafter issued, if the total amount thereof has not been advanced before such mortgage is recorded, the recording tax may be paid upon the amount advanced and

as advanced from time to time. Section 260 provides that, where the real property covered by the mortgage is located partly within the state and partly without the state, it shall be the duty of the State Board of Tax Commissioners to determine what proportion shall be taxable under the recording tax by determining the relative value of the mortgaged property within this state as compared to the total value of the entire mortgaged property, and that, if a mortgage shall be presented for record before such determination has been made, the mortgagor shall file a verified statement specifying the relative value of the property within and without the state, and that, upon receipt of such statement, the State Board of Tax Commissioners on notice shall "proceed to determine what proportion of the principal indebtedness secured by the mortgage shall be used as the measure of taxation within the state under the provisions" of the recording tax act.

Although section 259 provides that the recording tax upon a trust mortgage may be paid from time to time as advances thereon are made, section 260 does not specifically provide that, where the mortgaged property lies partly within and partly without the state, the State Board of Tax Commissioners may apportion the same as advances on such a mortgage shall be made. The strict reading of section 260 confines the board in such case to a determination made at the time the mortgage is given. That section in another part, however, does provide that it shall be the duty of the State Board of Tax Commissioners, where a mortgage covers property situated in more than one county, to apportion the recording tax to be paid to the respective recording officers, and, where one recording officer has received the tax, they may determine what proportion of the tax he shall pay to the several counties in which parts of the mortgaged property may be situated, and also the proportion of the tax to be distributed to each town or city within the county. The property of the relator is situated in two counties of the state and in various tax districts therein. The State Board of Tax Commissioners clearly had the right, and it was its duty, to determine the proportional amount of tax paid by relator which each town should receive, and to which each tax district was entitled.

The situation arising in the present case is one which the Legislature did not specifically provide for, but we are of the opinion that the State Board of Tax Commissioners, either as an incident to their duty to apportion the tax or by general fair intendment of the law, had the power to determine the relative value of the property situated within the state covered by relator's trust mortgage, and that that right extended to advancements thereunder as they were made from time to time. Such right, however, did not give the board the power to annul of its own motion a determination which had been made respecting particular advancement or advancements. When it fixed the recording tax which the relator should pay after the $4,500,000 had been advanced upon the mortgage, that determination was final, unless it was procured by some fraud or through some clear mistake. The board could not as it attempted to do say that that sum of money had been used to buy property situated within this state, and, when

another advancement under the mortgage was made, proceed to readjust the whole tax as of the last advancement, completely ignoring its prior adjustment. Nor was the apportionment which the board first made controlling as to all subsequent advancements, as the relator urges. Such arbitrary rule would be unjust both to the state and to the mortgagor. The value of the property in the two states at the time the mortgage was recorded might have been equal, and therefore the proportional value situated in this state would have been 50 per cent. The remaining $7,500,000 might have been all used to buy property in the state of Pennsylvania, in which case it would be manifestly unjust to compel the relator to pay a recording tax upon half that amount. On the other hand, such remaining sum may have been used to purchase property within the state of New York, and it would have been unfair to the state that the relator should pay only according to the prior rate. A wholly equitable way which is fair to both parties is to treat each advancement as a new mortgage, readjusting the tax to be paid on such advancement according to the relative value of the property within and without the state at the time such tax is paid. The law attempts to favor a trust mortgage by permitting the recording tax to be postponed until advancements thereunder shall be made. Such privilege should not be permitted to open an avenue of escape from taxation nor as a means of imposing an unjust tax.

This view is strengthened and the spirit of the law illustrated by the provision of section 255, which exempts supplemental mortgages from the recording tax. As has been suggested, the exact situation presented is not specifically covered by the language of the statute, and the intention of the Legislature must be gleaned by reasoning from analogy, acting upon the spirit of the statute imposing the recording tax, so far as we may gain it from its other provisions. Section 255 of the tax law, relating to supplemental mortgages, was intended to cover a situation substantially like the present, although not directly the same. By that section a new mortgage securing the old indebtedness and the new one and covering the property embraced in the former mortgage and other property is only taxable on the basis of the value of the added mortgage debt. When the subsequent installments under the present mortgage were made and the other property added, the original property and the subsequently acquired property became security for the entire mortgage debt, that represented by the old as well as the new. The rights of the parties are nearly the same as if the first installments were treated as a closed mortgage and a new mortgage issued to cover the present situation, in which case we would entirely disregard the original·mortgage indebtedness in fixing the tax. Applying the spirit of the provisions of section 255 to the, transaction in question, an intent is shown to treat the entire tax on the first mortgage debt or advancement as paid, and not a subject for further consideration. The section speaks of a mortgage pursuant to a provision or covenant in the original mortgage. Here the original mortgage contained a provision which makes the subsequent advancements a lien upon the original property, and

the original indebtedness is secured also by the subsequent property. The spirit therefore of the section as to supplemental mortgages may be fairly construed as covering the transactions under the mortgage in question.

When first called upon to say what tax the relator should pay, the Tax Board solemnly determined that only one-fifth of the entire property covered by the mortgage was located within the state, and, when less than $2,000,000 had been thereafter from time to time advanced under the mortgage, it determined that not only then, but at the time of its former determination, two-thirds of the relator's property covered by the mortgage was situated within this state. Such a determination may have been entirely proper when the last advancement was made, or even when intermediate advancements were made, but could not be just as of the time of the recording of the mortgage in view of the determination then made that only one-fifth of the property was so situated within this state. The rule suggested of treating each advancement as a new mortgage and apportioning the tax as of that time is much less complicated than the one suggested by the respondent of readjusting as a whole and giving credit for the tax paid, for it might transpire in the practical outcome of such a rule that a mortgagor might be entitled to a credit in a greater amount than the last tax imposed, in which case there would be no means of refunding the tax which had been paid.

Our conclusion is that the State Board of Tax Commissioners had jurisdiction to determine the proportional amount of property situated within this state covered by the mortgage at the time the first advancement was made, and that it has jurisdiction to make such determination as each subsequent advancement is made, and that such determinations as are made are final until reversed or set aside for fraud or mistake or like cause.

It follows that the determination of the State Board of Tax Commissioners must be annulled and the matter remitted to them for determination in accordance herewith, with $50 costs and disbursements to the relator. All concur, except BETTS, J., who dissents in an opinion.

BETTS, J. I dissent. Although the petition herein is lengthy, the facts are comparatively simple. The relator executed a mortgage to the New York Trust Company covering property in the states of New York and Pennsylvania to secure an issue of bonds in the amount of $12,000,000, which mortgage was recorded December 31, 1906, in the Erie county clerk's office. This mortgage was to cover after-acquired property. The work of this court might have been simplified if a copy of the mortgage had been returned to this court. There are perhaps obvious reasons why the relator might not care to annex a copy of it to his petition, but it is not easy to see why the State Board of Tax Commissioners did not return a copy of it. At that time $4,500,-000 had been advanced under this mortgage as was shown by a statement attached to said mortgage, and the sum of $7,699.50 was then paid as the mortgage recording tax on the property stated to be in

this state. On October 22, 1907, the State Board of Tax Commissioners, pursuant to statute, determined that the tax payable at the time of the recording was the sum of $4,508, and the difference between that sum and $7,699.50 was returned to the party paying it. Thereafter various advances were made on the said mortgage until $1,870,000 additional had been advanced, making the total amount advanced upon the mortgage to April 21, 1909, the sum of $6,370,000. The mortgage recording taxes were paid at the same rate as respondent had fixed originally at or about the time of these advances, and including the original $4,508, amounted to $6,401.74. Shortly thereafter, and in August, 1909, the State Board of Tax Commissioners made a new determination as of April 21, 1909, of the total amount advanced upon this mortgage taxable in this state, and determined as follows:

"That the proportion of the mortgage taxable within the state of New York, based upon the relative value of the property as of April 21, 1909, is the sum of $4,633,500."

And it fixed the tax thereon as $23,167.50, and deducted the total amount of taxes paid on said mortgage of $6,401.74, and determined "that there is due and payable to the recording officer of Erie county, New York, the sum of $16,765.76." The traction company, feeling aggrieved, secured a writ of certiorari which is before us for determination.

The sections of the tax law so far as applicable to this proceeding are as follows:

Section 253:

"Recording Tax. A tax of fifty cents for each one hundred dollars and each remaining major fraction thereof of principal debt or obligation which is, or under any contingency may be secured at the date of the execution thereof or at any time thereafter by mortgage on real property situated within the state recorded on or after the first day of July, nineteen hundred and six, is hereby imposed on each such mortgage, and shall be collected and paid as provided in this article."

This plainly provides for a tax of 50 cents on each $100 of principal debt or obligation secured by mortgage on real property in this state. If nothing else were contained in the statute and the property was all in this state, the recording officer would assess 50 cents for each $100 on $12,000,000, and arrive at the sum of $60,000, as the total tax to be paid upon the amount of this mortgage secured by property in this state on the day it was offered for record. That is the amount that would be paid by an ordinary individual mortgagor or mortgagee on an ordinary mortgage of that amount covering property in this state. Trust mortgages are, however, favored by the statute, and they are permitted various deferred and prorated payments as we shall see.

Sections 259 and 260 are the apparent exceptions to the plain rule applied to ordinary mortgages by section 253.

Section 259, so far as important here, is as follows:

"Trust Mortgages. In the case of mortgages made by corporations in trust to secure payment of bonds or obligations issued or to be issued thereafter, if the total amount of principal indebtedness which under any contingency may be advanced or accrue or which may become secured by any such mortgage which is subject to this article has not been advanced or ac-

crued thereon or become secured thereby before such mortgage is recorded, it may contain at the end thereof a statement of the amount which at the time of the execution and delivery thereof has been advanced or accrued thereon, or which is then secured by such mortgage; thereupon the tax payable on the recording of the mortgage shall be computed on the basis of the amount so stated to have been so advanced or accrued thereon or which is stated to be secured thereby. * * * Whenever a further amount is to be advanced under the original mortgage, * * * the corporation making such mortgage shall, at or before the time when such amount is to be advanced, accrues or becomes secured, file in the office of the recording officer where such mortgage has been * * * first recorded a statement * * * of the amount of principal indebtedness to be so advanced * * * and the tax on such amount shall become due and payable at the time of filing such statement."

Then the section provides that such additional tax shall be paid to the recording officer where such mortgage was first recorded.

Section 260, so far as material, is as follows:

"Apportionment by State Board of Tax Commissioners. * * * When the real property covered by a mortgage is located partly within the state and partly without the state it shall be the duty of the State Board of Tax Commissioners to determine what proportion shall be taxable under this article by determining the relative value of the mortgaged property within this state as compared to the total value of the entire mortgaged property, taking into consideration in so doing, the amount of all prior incumbrances .upon such property or any portion thereof. If a mortgage covering property located partly within the state and partly without the state, is presented for record before such determination has been made, then there may be presented to the recording officer with such mortgage * * * a statement in duplicate verified by the mortgagor, specifying the value of the property covered by the mortgage within the state and the property covered by the mortgage without the state, stated separately. One of such statements * * * shall be transmitted by him [the recording officer] to the State Board of Tax Commissioners. The tax payable under this article before the determination by the State Board of Tax Commissioners, shall be computed upon such proportion of the principal indebtedness secured by the mortgage or of the sum advanced thereon as the case may be as the value of the mortgaged property within the state shall bear to the total value of the entire mortgaged property as set forth in such statement. The State Board of Tax Commissioners shall on receipt of the statement * * * proceed to determine what proportion of the principal indebtedness secured by the mortgage shall be used as the measure of taxation within the state under the provisions of this article."

Then follow the provisions as to the method by which the respondent shall determine these values and the reports and accounts that they shall make thereon, none of which are in issue here, nor is the correctness of their tabulation, so far as the figures themselves go, questioned by the relator.

These quotations are as the statute now is, and, although the arrangement of sections has been changed and sentences transposed greatly, I cannot see but that the law was substantially the same at the time of the two determinations by the State Board of Tax Commissioners.

So we have in this case determined by a board authorized by statute to determine "that the proportion of the mortgage taxable within the state of New York, based upon the relative value of the property as of April 21, 1909, is the sum of $4,633,500." The tax is 50 cents for each $100, which upon the amount named would amount to $23,167.50.

Of this amount only $6,401.74 has been paid. The difference, amounting to $16,765.76, is unpaid. If any one representing the mortgagee or mortgagor had gone to the recording officer with a mortgage for $4,633,500 for record upon property within this state, he would have been required at the time of placing it upon record to have paid to that recording officer $23,167.50, according to the provisions of section 253. Why should a trust mortgage be otherwise treated?

There is no exception or exemption anywhere in the statute as to the amount of the recording tax upon a mortgage on property in this state. It is at all times 50 cents on each $100 of principal debt or obligation secured by mortgage on property in this state, and the only change made is a deferred payment on a trust mortgage, and, when the real property covered by the mortgage is located partly within and partly without the state, the determination or apportionment by the State Board of Tax Commissioners of what proportion shall be taxable in this state by determining the relative value of the mortgaged property within this state as compared to the total value of the entire mortgaged property, taking into consideration in so doing the amount of all prior incumbrances upon such property or any portion thereof. The relator here is not contesting the amount of the tax, which would place the burden upon the officer asserting it, and it would be construed the most strongly against the authorities levying the tax and in favor of the taxpayer. The relator does not dispute that it should pay 50 cents for each $100 of principal debt or obligation, nor does it dispute the correctness of the State Board of Tax Commissioners' tabulation, but it claims that it is entitled to some kind of an exemption in addition to its deferred and apportioned payments which exemption the respondents have not granted it. It is asserting an exemption from taxation, and that places the burden upon the party making such an assertion—i. e., the relator—to show that in some way it comes within some exemption of the general rule or statute for the taxation of property for which it is assessed or taxed. See People ex rel. Young Men's Association v. Sayles, 32 App. Div. 197, 53 N. Y. Supp. 67, affirmed 157 N. Y. 677, 51 N. E. 1093, on opinion below, in which it is held:

"It is well settled that statutes exempting property from general taxation must be strictly construed against the property holder, and, if the exemption is not plainly expressed, it may not be presumed."

See People ex rel. Insurance Company v. Davenport, 91 N. Y. 574–586, which holds as follows:

"The courts have, therefore, required an exemption from taxation to be described in clear and unambiguous language, and to appear to be undisputably within the intention of the Legislature, or they have declined to enforce it."

The relator claims that there is no authority in the statute for a new determination by the State Board of Tax Commissioners at any time after its original determination, when the mortgage is first offered for record. While the statute does not provide for successive determinations by the State Board of Tax Commissioners, it does not provide against such determinations nor forbid them. The relator

cannot be harmed whether these determinations are one or many, so long as at any time it is not required to pay more tax than it would have to, if it were recording a new mortgage for the total amount advanced up to the time the determination by the State Board of Tax Commissioners is made. The statute at all times provides for a recording tax on the mortgage or on the principal debt or obligation secured by mortgage on real property situated within the state or on the amount advanced on said mortgage on real property in this state as adjusted and determined by the State Board of Tax Commissioners as required by the provisions of said section 260. The mortgagor is not required to borrow so far as anything appears in this record one other cent of money on this mortgage from the trust company, nor is it required to issue any more bonds thereunder; in other words, the mortgagor may have stopped on April 21, 1909, securing any additional funds on real property in this state secured by this mortgage. If so, the mortgage is a closed incident so far both as the mortgagor, the trust company, the bondholders, and the state or the recording officer are concerned as far as the payment of any recording tax is concerned. If it is a closed incident and nothing farther is done between borrower and lender under it, a mortgage has been recorded, which, as adjusted by respondent according to the provisions of section 260, secures a principal debt or obligation on real property situated within this state of the value of $4,633,500, and there has been received as a tax therefor only the sum of $6,401.74, leaving a balance unpaid of $16,765.76, for which no reason appears in anything submitted on this hearing to this court why it remains unpaid. No reason is advanced on the part of the relator why it should not be paid.

The statute here at all times speaks of the mortgage as a whole. The State Board of Tax Commissioners have in accordance with the statute as I construe it fixed the value of the property in this state secured by that mortgage as of April 21, 1909, and the amount of tax due thereon. I can see no force, justice, nor equity in the claim of the relator why the unpaid portion of the tax should not be paid by the relator.

I think the determination of the State Board of Tax Commissioners should be affirmed, with costs.